UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| KUULEIALOHA KENNEDY,<br><br>         Plaintiff,<br><br>   vs.<br><br>KILOLO KIJAKAZI, ACTING<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>         Defendant. | CIV. NO. 20-00412 LEK-KJM |

**ORDER: GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPEAL;
REVERSING THE ADMINISTRATIVE LAW JUDGE'S DECISION;
AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

Before the Court is Plaintiff Ku`uleialoha Kennedy's

("Plaintiff") Complaint for Review of Social Security Disability

Benefits Determinations ("Complaint"), filed on September 30,

2020, [dkt. no. 1,] in which she appeals Administrative Law

Judge Marti Kirby's ("ALJ") April 29, 2020 Decision ("Appeal").

The ALJ issued the Decision after conducting a telephonic

hearing on April 13, 2020.  [Modified Administrative Record

Dated May 29, 2021 ("AR"), filed 6/2/21 (dkt. nos. 24, 25), at

60 (dkt. no. 24-3 at PageID #: 2029).[1]]  The ALJ ultimately

concluded that Plaintiff was not disabled under §§ 216(i) and

_____

[1] The Decision, including the Notice of Decision –
Unfavorable and the List of Exhibits, is AR pages 57-76.  [Dkt.
no. 24-3 at PageID #: 2026-45.]

223(d) of the Social Security Act.  [Decision, AR at 72 (dkt. no. 24-3 at PageID #: 2041).]

The Plaintiff's Brief was filed on June 7, 2021 ("Opening Brief").  [Dkt. no. 26.]  Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("the Commissioner"), filed the Answering Brief on July 8, 2021, and Plaintiff filed her Reply Brief on July 22, 2021.  [Dkt. nos. 29, 30.]  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").  For the reasons set forth below, Plaintiff's Appeal is granted in part and denied in part.  The Appeal is granted, insofar as the Decision is reversed, and the Appeal is denied as to Plaintiff's request for a remand with instructions to award benefits.  The matter is remanded to the ALJ for further proceedings consistent with this Order.

## BACKGROUND

On February 27, 2018, Plaintiff filed a Title II application for disability insurance benefits, alleging she was disabled as of July 5, 2016.  Plaintiff's claim was denied, initially and on reconsideration.  On December 6, 2018, Plaintiff filed a written request for a hearing.  Plaintiff and Coughlin N. Carly, an impartial vocational expert ("VE"),

testified at the April 13, 2020 hearing. [Decision, AR at 60
(dkt. no. 24-3 at PageID #: 2029).]

Plaintiff worked as a flight attendant from 1992 to
2006 and from 2009 until July 2016. [Exh. 1E (Disability Report
- Adult - Form SSA-3368), AR at 239 (dkt. no. 24-7 at PageID
#: 2212).] Plaintiff was injured in a July 5, 2016 incident
involving an irate passenger. [AR at 1666-69 (dkt. no. 25-5 at
PageID #: 3651-54) (email from J. Lee Turner, dated 7/6/16); AR,
at 1670-72 (dkt. no. 25-5 at PageID #: 3655-57).] At the
hearing before the ALJ, Plaintiff testified that she had not
worked since July 6, 2016, although her employer, American
Airlines, made some payments to her after she stopped working to
compensate her for her accrued vacation time. Plaintiff
received worker's compensation payments for the maximum possible
period of two years, and she never attempted to go back to work.
[Hrg. trans., AR at 82-84 (dkt. no. 24-3 at PageID #: 2051-53).]

In the Decision, the ALJ found that Plaintiff was
insured, for purposes of the Social Security Act, through
September 30, 2023. [Decision, AR at 62 (dkt. no. 24-3 at
PageID #: 2031).] At step one of the five-step sequential
analysis to determine whether a claimant is disabled, the ALJ
found that Plaintiff had engaged in substantial gainful activity
from January 1, 2019 through March 31, 2019, but that there were
continuous, twelve-month periods after the alleged onset date

3

during which Plaintiff was not engaged in substantial gainful activity.  Thus, the remaining steps were analyzed as to those periods only.  [Id. at 63 (dkt. no. 24-3 at PageID #: 2032).]

At step two, the ALJ found that Plaintiff had "the following severe impairments: chronic pain syndrome; diabetes mellitus; obesity; right side sciatica; severe degenerative joint disease of the left knee, status post arthroscopy in March 2017; osteoarthritis of the right knee; and adjustment disorder."  [Id. (citing 20 C.F.R. § 404.1520(c)).]  However, at step three, the ALJ found that none of Plaintiff's impairments, either individually or in combination, met or equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Id. (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).]

In the step four analysis, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

> to perform a range of light work as defined in 20
> CFR 404.1567(b) and SSR 83-10 specifically as
> follows: the claimant can occasionally lift,
> carry, push, and pull up to 20 pounds, and 10
> pounds or less frequently; she can stand and/or
> walk for six hours out of an eight-hour workday
> with regular breaks; she can sit for six hours
> out of an eight-hour workday with regular breaks;
> she can frequently balance; she can occasionally
> bend, stoop, and climb steps; she is precluded
> from kneeling, crawling, or squatting; she is
> precluded from climbing unprotected heights, or
> working around moving machinery or other hazards;
> she can avoid walking on uneven terrain; she is
> precluded from performing repetitive or constant
> pushing/pulling with the lower extremities with
> the lower extremities such as operating foot

> pedals; she needs a sit/stand option meaning the
> individual would require a job that could be
> performed from either a seated position or from a
> standing position so that she could periodically
> change position throughout an eight hour work day
> and a change in position would not occur more
> frequently than 30 minute intervals and the
> individual could remain on task during any
> position change; she can understand, remember,
> and carry out simple routine tasks for up to two
> hour periods of time with only occasional
> interaction with the general public; and she is
> precluded from performing fast-paced production
> or assembly line type work.

[Id. at 65 (dkt. no. 24-3 at PageID #: 2034).]  The ALJ found
that Plaintiff's impairments could reasonably be expected to
cause some of the symptoms Plaintiff described, but the totality
of the evidence was not consistent with Plaintiff's statements
about the intensity, persistence, and limiting effects of her
symptoms.  [Id. at 66-67 (dkt. no. 24-3 at PageID #: 2035-36).]
The ALJ's RFC finding was based upon the VE's testimony about
the occupations that a hypothetical person, with certain
limitations, could perform.  See hrg. trans., AR at 96-98 (dkt.
no. 24-3 at PageID #: 2065-67).  The ALJ also asked the VE
whether there were any occupations that could be performed by a
person, with the limitations previously given the VE, who also
"would require at least one unscheduled break of 15 to 20
minutes in addition to regular breaks and lunch in an eight hour
workday" for the purpose of "elevating a leg, chronic pain, side
effects of medication, and possibly psychological symptoms."

[Id. at 98 (dkt. no. 24-3 at PageID #: 2067).]  The VE testified that the additional limitation of that type of break would preclude the hypothetical individual from working.  [Id.]

Plaintiff testified that her doctors and physical therapist instructed her to elevate her legs "several times a day, and ice it for 15 to 20 minutes[,]" but Plaintiff testified that she has to "do it many times a day because that's the only way [she] can get relief."  [Id. at 91 (dkt. no. 24-3 at PageID #: 2060).]  The ALJ did not incorporate the need to elevate her leg/legs as a limitation in Plaintiff's RFC because "[t]he records do not support that [Plaintiff] has to lie down during the day or elevate her legs due to swelling or pain[,]" and because Plaintiff's "treating provider did not identify that she needed to lie down or elevate her legs during the day." [Decision, AR at 66 (dkt. no. 24-3 at PageID #: 2035).]

As to Plaintiff's position that "she was unable to work due to disabling knee pain that radiated into her back, shoulders," the ALJ noted that Plaintiff's orthopedist wrote in an April 2020 statement that her "condition had 'improved substantially'" and, although Plaintiff still reported pain and stiffness in her left knee, "she had gained 'improved motion and function.'"  [Id. (citing AR at 1856 (dkt. no. 25-6 at PageID #: 3842) (Letter dated 4/10/20 by Joseph C. Varcadipane, M.D)).] In an April 10, 2020 letter, Dr. Varcadipane opined that:

6

> At the current time, [Plaintiff] is not completely recovered from her total knee arthroplasty and has not yet achieved maximal medical improvement with respect to her left knee.
>
> To date, she has improved substantially gaining improved motion and function however she still notes pain and stiffness in her left knee that she feels is **limiting her ability to continue working in her previous job**. This is primarily given the functional demands requiring her to be on her feet for several hours a day and potentially lifting heavy objects (>25 lbs). **In general, after patients undergo total knee arthroplasty, returning to "high-level" function requiring heavy demands with respect to being on one's feet all day or lifting heavy objects is not always possible with all patients.** While I expect her to possibly improve further with respect to her left knee pain and function, at this point in time, her main limitations from a medical standpoint are that she should avoid "high-impact activities" such as running, crawling, squatting, or additional activities that could compromise the longevity of her knee implants. **"Less" impactful activities such as standing or being seated for long periods of time, while not likely to compromise her knee replacement, are acceptable as long as they fall within her pain threshold and overall functional capacity.**

[AR at 1856 (dkt. no. 25-6 at PageID #: 3842) (emphases added).]

As to Plaintiff's position that severe mental impairments prevent her from working, the ALJ noted that the examiner in a January 16, 2018 psychology consultation stated, although Plaintiff had an anxious and depressed mood, she had normal attention and concentration, she had no complaints of memory problems, she had normal thought processes and content,

and she was friendly and cooperative.  [Decision, AR at 66 (dkt. no. 24-3 at PageID #: 2035) (citing AR at 348-49 (dkt. no. 24-8 at PageID #: 2322-23) (Psychology Consultation report by Ronald L. Barozzi, Ph.D., Psy.D., LMT, dated 1/17/18)).]

The ALJ found that Plaintiff "has not been deprived of her ability to perform work subject to the residual functional capacity assessed by this decision for any 12-month period since the alleged onset date."  [Id. at 69 (dkt. no. 24-3 at PageID #: 2038).]  However, the ALJ found that, based on her RFC, Plaintiff was incapable of returning to her past relevant work as a flight attendant.  [Id. at 70 (dkt. no. 24-3 at PageID #: 2039).]

At step five, the ALJ noted that Plaintiff was in the "closely approaching advanced age" category at the time of the Decision.  [Id. (citing 20 C.F.R. § 404.1563).]  Further, Plaintiff has at least a high school education, and she speaks English.  [Id. (citing 20 C.F.R. § 404.1564).]  The Decision does not address whether Plaintiff has transferable job skills because the ALJ found that, using the Medical-Vocational Rules framework, Plaintiff was "not disabled," irrespective of the transferable skills issue.  [Id. (citing SSR 82-41; 20 C.F.R. Part 404, Subpart P, Appendix 2).]  The ALJ found that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could make a successful adjustment to the following jobs that

8

exist in significant number in the national economy: price
marker, routing clerk, and assembler.  [Id. at 70-71 (dkt.
no. 24-3 at PageID #: 2039-40).]  The ALJ therefore found that
Plaintiff was not under a disability from the alleged onset date
to the date of the Decision.  [Id. at 71 (citing 20 C.F.R.
§ 404.1520(g)).]

On May 11, 2020, Plaintiff requested review of the
Decision.  [AR at 194-96 (dkt. no. 24-5 at PageID #: 2165-67).]
Plaintiff submitted additional medical evidence, but the Appeals
Council did not consider the evidence because it did not relate
to the period at issue, i.e., from the alleged onset date to the
date of the Decision.  [Notice of Appeals Council Action ("AC
Notice"), AR at 2 (dkt. no. 24-3 at PageID #: 1971).]  By notice
dated August 26, 2020, the Appeals Council denied Plaintiff's
request for review.  [AC Notice, AR at 1-6 (dkt. no. 24-3 at
PageID #: 1970-75).]  Thus, the ALJ's Decision constitutes the
final decision of the Commissioner.  [Id. at 1 (dkt. no. 24-3 at
PageID #: 1970).]

In the instant Appeal, Plaintiff asserts she is unable
to work because of a combination of chronic knee pain and
impairments to her mental health.  She contends the Decision
should be reversed because: the ALJ failed to take her
statements into account; the ALJ erred in the evaluation of the

medical evidence; and the Decision as a whole is not supported by substantial evidence.

## STANDARD

"A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security." Concannon v. Saul, Civ. No. 19-00267-ACK-RT, 2020 WL 1492623, at *2 (D. Hawai`i Mar. 27, 2020), aff'd, No. 20-15732, 2021 WL 2941767 (9th Cir. July 13, 2021).

## I.   Review of Social Security Decisions

The Ninth Circuit conducts a de novo review of a district court's order in a social security appeal. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014). Thus, in reviewing the Commissioner's decision, this Court applies the same standards that the Ninth Circuit applies.

A court will only disturb the Commissioner's decision if it is not supported by substantial evidence or if it is based on legal error. Id. "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (citation and internal quotation marks omitted). In reviewing a decision by the Commissioner, a district court must consider the entire record as a whole. Id. Where the record, considered as a whole, could support either affirmance or

10

reversal, the district court must affirm the decision.  Attmore
v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016).  To ensure a court
does not substitute its judgment for the ALJ's, it must "'leave
it to the ALJ to determine credibility, resolve conflicts in the
testimony, and resolve ambiguities in the record.'"  Brown-
Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (quoting
Treichler, 775 F.3d at 1098).

## II.  **Five-Step Analysis**

> The following analysis applies in cases involving
review of the denial of social security disability benefits.

>> To determine whether an individual is
>> disabled within the meaning of the Social
>> Security Act, and therefore eligible for
>> benefits, an ALJ follows a five-step sequential
>> evaluation.  See 20 C.F.R. § 404.1520.  The
>> burden of proof is on the claimant at steps one
>> through four.  See Valentine v. Comm'r of Soc.
>> Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009).
>> At step one, the ALJ must determine if the
>> claimant is presently engaged in a "substantial
>> gainful activity," § 404.1520(a)(4)(i), defined
>> as "work done for pay or profit that involves
>> significant mental or physical activities," Lewis
>> v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001)
>> (citing §§ 404.1571–404.1572, 416.971-416.975).
>> At step two, the ALJ decides whether the
>> claimant's impairment or combination of
>> impairments is "severe," § 404.1520(a)(4)(ii),
>> meaning that it significantly limits the
>> claimant's "physical or mental ability to do
>> basic work activities," § 404.1522(a); see Webb
>> v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).

>> At step three, the ALJ evaluates whether the
>> claimant has an impairment, or combination of
>> impairments, that meets or equals the criteria of
>> any of the impairments listed in the "Listing of

Impairments" (referred to as the "listings").
See § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404
Subpt. P, App. 1 (pt. A).  The listings describe
impairments that are considered "to be severe
enough to prevent an individual from doing any
gainful activity." § 404.1525(a).  Each
impairment is described in terms of "the
objective medical and other findings needed to
satisfy the criteria of that listing."
§ 404.1525(c)(3).  "For a claimant to show that
his impairment matches a listing, it must meet
all of the specified medical criteria.  An
impairment that manifests only some of those
criteria, no matter how severely, does not
qualify."  Sullivan v. Zebley, 493 U.S. 521, 530,
110 S. Ct. 885, 107 L. Ed. 2d 967 (1990)
(footnote omitted).[2]  If an impairment does not
meet a listing, it may nevertheless be "medically
equivalent to a listed impairment" if the
claimant's "symptoms, signs, and laboratory
findings are at least equal in severity to" those
of a listed impairment.  § 404.1529(d)(3).  But a
claimant cannot base a claim of equivalence on
symptoms alone.  Even if the claimant alleges
pain or other symptoms that makes the impairment
more severe, the claimant's impairment does not
medically equal a listed impairment unless the
claimant has signs and laboratory findings that
are equal in severity to those set forth in a
listing.  § 404.1529(d)(3).  If a claimant's
impairments meet or equal the criteria of a
listing, the claimant is considered disabled.
§ 404.1520(d).

If the claimant does not meet or equal a
listing, the ALJ proceeds to step four, where the
ALJ assesses the claimant's residual functional
capacity (RFC) to determine whether the claimant
can perform past relevant work, § 404.1520(e),
which is defined as "work that [the claimant has]
done within the past 15 years, that was
substantial gainful activity, and that lasted
long enough for [the claimant] to learn to do

---

[2] Sullivan has been superseded by statute on other grounds.
See, e.g., Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir.
2013).

it," § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. § 404.1520(f).

At step five, the burden shifts to the agency to prove that "the claimant can perform a significant number of other jobs in the national economy." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002).  To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404 Subpt. P, App. 2,4 or on the testimony of a vocational expert.  Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." § 404.1560(b)(2).  An ALJ may also use "other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor."  Id.

Throughout the five-step evaluation, the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020) (some

alterations in Ford) (footnotes omitted).

## DISCUSSION

## I.  Whether It Was Error to Discount Plaintiff's Statements

The Ninth Circuit has stated:

To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might

> reasonably produce the symptoms or pain alleged
> and there is no evidence of malingering, the ALJ
> must give specific, clear, and convincing reasons
> for rejecting the testimony by identifying which
> testimony the ALJ found not credible and
> explaining which evidence contradicted that
> testimony.

Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017)

(brackets, citation, and internal quotation marks omitted).

Further, those reasons must be supported by substantial

evidence.  Marsh v. Colvin, 792 F.3d 1170, 1174 n.2 (9th Cir.

2015).

　　　　The ALJ found that Plaintiff's "medically determinable

impairments could reasonably be expected to cause some of the

alleged symptoms[.]"  [Decision, AR at 66 (dkt. no. 24-3 at

PageID #: 2035).]  Further, although the ALJ found that

Plaintiff's statements about the extent of and limitations

caused by her symptoms was "not entirely consistent with" the

record, the ALJ did not expressly find there was evidence of

malingering.  See id. at 67 (dkt. no. 24-3 at PageID #: 2036).

The ALJ was therefore required to provide "specific, clear, and

convincing reasons for rejecting" Plaintiff's subjective symptom

testimony.  See Laborin, 867 F.3d at 1155.  Plaintiff argues the

ALJ did not identify clear and convincing reasons for rejecting

Plaintiff's testimony about: her need to elevate her leg and

rest to manage pain and swelling her knee; and her inability to

maintain her emotional state when she is in pain.

14

A.   <u>**Plaintiff's Need to Elevate Her Leg**</u>

At the hearing before the ALJ, Plaintiff testified that the main problem which prevents her from working is her daily pain in her left knee, which also "affects [her] right knee from compensation" and "throws off [her] back and [her] SI joint.  And then goes up into [her] shoulders and [her] neck and [her] head." [Hrg. Trans., AR at 84 (dkt. no. 24-3 at PageID #: 2053).]  According to Plaintiff, her daily average pain level is five out of ten, but she reaches seven out of ten every day. [<u>Id.</u> at 88 (dkt. no. 24-3 at PageID #: 2057).]  Sometimes she will reach an eight out of ten in the afternoon or evening and, when the pain is that intense, she "get[s] into a rage" and "can't control [her]self."  [<u>Id.</u>]

Plaintiff stated her doctors instructed her to elevate her leg.  She testified that she applies ice to her leg and elevate it "[a]t least every hour . . . in order to get some relief[.]"  [<u>Id.</u> at 91 (dkt. no. 24-3 at PageID #: 2060).]  She leaves the ice on for fifteen to twenty minutes, and she leaves her leg elevated above her heart for "as long as [she] can stay in that position."  [<u>Id.</u>]  Sometimes Plaintiff has to lie down so that she can elevate her leg in the other direction to relieve pain on the back of her leg.  [<u>Id.</u>]

Plaintiff testified that her physical issues would also impair her emotional and psychological ability to focus and

to interact with people at work.  [Id. at 94 (dkt. no. 24-3 at
PageID #: 2063).]  She "cr[ies] eas[il]y when [she is] dealing
with other people," she "get[s] angry when [she] never used to,"
and she "can't get things done."  [Id. at 94-95 (dkt. no. 24-3
at PageID #: 2063-64).]  Plaintiff has difficulty focusing
because she is preoccupied with thinking about how to manage her
pain, how she is going to get through the day, and how she is
going to accomplish her daily activities.  [Id. at 95 (dkt.
no. 24-3 at PageID #: 2064).]  The ALJ rejected Plaintiff's
testimony about the need to elevate her leg multiple times a day
to alleviate swelling or pain because the ALJ found there was no
evidence in the record that her medical providers instructed her
to lie down or elevate her leg.  [Decision, AR at 66 (dkt.
no. 24-3 at PageID #: 2035).]

     Plaintiff's complaints of pain and swelling in her
left knee are well-documented in the medical records.  See,
e.g., AR at 293 (dkt. no. 24-8 at PageID #: 2267) (Kaimukī CARE
("KC") 4/17/17 Patient Evaluation, noting pain and swelling in
her left knee among Plaintiff's "Chief Complaint"); AR at 340
(dkt. no. 24-8 at PageID #: 2314) (KC 9/19/17 Patient Progress
Note, noting Plaintiff "continues to experience pain and
swelling with prolonged standing"); AR at 363 (dkt. no. 24-9 at
PageID #: 2338) (Dr. Varcadipane's 5/30/18 Progress Notes,
listing pain and swelling among Plaintiff's current symptoms in

her left knee); AR at 370 (dkt. no. 24-9 at PageID #: 2345)
(Ikuo Maeda, M.D.'s Progress Notes, dated 5/23/18, noting
Plaintiff was "having a lot of pain, [and was] not able to be
functional"); AR at 378 (Dr. Maeda's 5/16/18 Progress Notes,
noting bilateral knee pain, with swelling, on a constant basis);
AR at 386-89 (dkt. no. 24-9 at PageID #: 2361-64) (Straub Clinic
and Hospital ("Straub") 12/18/17 Emergency Department ("ED")
Provider Notes, noting Plaintiff presented with left knee
swelling and she was concerned she was having a reaction to
recent injections she received); AR at 854 (dkt. no. 24-14 at
PageID #: 2832) (Straub 10/1/19 Nursing Notes, stating Plaintiff
had "7-Moderate to moderate-severe pain" in her left knee,
including swelling); AR at 1029 (dkt. no. 25-1 at PageID
#: 3010) (Straub 12/20/19 "Orthopaedic Surgery Follow-up Note,"
noting that, although she had pain relief after the surgery,
"she continues to experience swelling and discomfort with any
extended periods of standing or walking"); AR at 1040 (dkt.
no. 25-1 at PageID #: 3021) (Straub 1/3/20 Physical Therapy Soap
Note, noting Plaintiff "states pain and swelling are still
present but slowly improving").

     The ALJ's finding that none of Plaintiff's medical
providers instructed her to elevate her leg was not supported by
substantial evidence.  See Marsh, 792 F.3d at 1174 n.2.  First,
there are instances in the medical records where Plaintiff's

17

providers noted a recommendation to ice and elevate her left leg.  For example, the notes for Plaintiff's December 18, 2017 Straub ED visit include: "Recommend ice and elevation."  [AR at 389 (dkt. no. 24-9 at PageID #: 2364).]  During patient education in November 2019, Plaintiff's physical therapist stressed the "[i]mportance of icing 3-5 times a day with elevation of leg."  [AR at 896 (dkt. no. 24-12 at PageID #:2874) (Physical Therapy Log/Goal Status table in Straub Physical Therapy Soap Note, dated 11/8/19).]

Further, there are multiple instances where Plaintiff's medical providers noted that Plaintiff reported experiencing relief from her symptoms with rest or rest and ice. See, e.g., AR at 293 (dkt. no. 24-8 at PageID #: 2267) (noting Plaintiff reported her knee felt better with "resting and icing."); AR at 363 (dkt. no. 24-9 at PageID #: 2338) (listing "Rest" as one of her "Alleviating factors"); AR at 854 (dkt. no. 24-14 at PageID #: 2832) (same).  During a January 3, 2020 post-operative physical therapy session, Plaintiff said she "fe[lt] she d[id]n't have to sit and ice [her] knee as often due to pain."  [AR at 1040 (dkt. no. 25-1 at PageID #: 3021).] Thus, Plaintiff consistently reported to her medical providers that she used some form of rest and the application of ice to manage her knee symptoms.

Plaintiff's records also show that her physical therapy included excises and pain management strategies for her to do at home.  Her 2017 physical therapy plan of care included education and a home exercise plan ("HEP"), and the goals of her plan included "[n]ormaliz[ing] swelling" and "be[ing] independent with home program."  [AR at 293-94 (dkt. no. 24-8 at PageID #: 2267-68) (KC Patient Evaluation, dated 4/17/17).]  Her 2019-2020 physical therapy series also involved a HEP.  See, e.g., AR at 897-98 (dkt. no. 24-12 at PageID #: 2875-76) (noting, under "Patient Education," "Learning needs: HEP").  At a December 4, 2019 session, the physical therapist noted that Plaintiff was advised "not [to] over-do house work and ADL's to avoid knee becoming more painful and swollen[.]"  [AR at 988 (dkt. no. 24-12 at PageID #: 2966) (Straub Progress Notes, Assessment, dated 12/4/19).]

Considering the entire record as a whole, see Hill, 698 F.3d at 1159: Plaintiff had ongoing issues with pain and swelling in her left knee; at least two of her medical providers instructed her to apply ice and elevate her leg; exercises and symptom management strategies at home were part of her plan of care; and Plaintiff consistently reported experiencing some relief from symptoms with some form of rest and the use of ice. Even recognizing that it is the ALJ's role to make credibility determinations and to resolve conflicts and ambiguities in the

19

evidence, <u>see</u> <u>Brown-Hunter</u>, 806 F.3d at 492, to the extent that the ALJ found there is no medical evidence that Plaintiff needs to elevate her leg to alleviate swelling or pain, the finding is not supported by substantial evidence.  <u>See</u> Decision, AR at 66 (dkt. no. 24-3 at PageID #: 2035).  However, to the extent that the ALJ found the record did not support Plaintiff's testimony about the **frequency** that she had to elevate her leg, that finding is within the realm of rulings which are dependent upon credibility determinations and the resolution of conflicts and ambiguities in the record.[3]  The ALJ erred in disregarding Plaintiff's statements about her need to elevate and to apply ice to her leg on the ground that there was no evidence that her care providers instructed her to do so.

B.   **Psychological Limitations**

Plaintiff testified that, in the afternoon or evening, her pain level is so bad that she cannot control her mental state.  <u>See</u> hrg. trans., AR at 88 (dkt. no. 24-3 at PageID #: 2057).  She also testified that she does not believe she can work because she cries easily when she has to deal with other

---

[3] Plaintiff was instructed on November 7, 2019 to apply ice and elevate her leg three to five times a day, and the physical therapist reviewed that schedule with Plaintiff on November 8, 2019.  [AR at 896 (dkt. no. 24-12 at PageID #: 2874).]  It is unclear how often Plaintiff was applying ice and elevating her leg prior to these physical therapy sessions, and it is unclear how long Plaintiff was to continue with the schedule given by the physical therapist on November 7, 2019.

people, she gets angry more often than she used to, and she is unable to focus or to complete tasks.  See id. at 94-95 (dkt. no. 24-3 at PageID #: 2063-64).  The ALJ noted Plaintiff "developed depressive and anxiety related symptoms after dealing with her physical impairments, and lifestyle changes caused by her work-related injury."  [Decision, AR at 68 (dkt. no. 24-3 at PageID #: 2037) (citing AR at 348 (dkt. no. 24-8 at PageID #: 2322) (Psychology Consultation by Dr. Barozzi, dated 1/17/18)).]  The ALJ found that the record as a whole supported a finding of only "moderate psychological limitations due to her impairments."  [Id. (citation omitted).]  The ALJ therefore included the following limitations in Plaintiff's RFC: only "simple routine tasks"; only "occasional interactions with the general public"; and no "fast-paced production nor assembly line type work . . . ."  Id.; see also id. at 65 (dkt. no. 24-3 at PageID #: 2034) (RFC finding).  The ALJ's finding of moderate psychological limitations and rejection of the limitations suggested in Plaintiff's testimony were within the realm of rulings dependent upon credibility determinations and the resolution of conflicts and ambiguities in the record, in light of the conflicts between Plaintiff's testimony and other parts of the record.  See, e.g., Decision, AR at 68 (dkt. no. 24-3 at PageID #: 2037) (noting Amy Humphrey, Psy.D., opined that Plaintiff would be unable to function during more than fifteen

percent of a work day, but rejecting that opinion as unsupported by the evidence, including Dr. Humphrey's treatment notes).[4] Thus, if the ALJ properly considered the medical evidence regarding Plaintiff's psychological symptoms, see *infra* Discussion Section II.B., this Court must defer to the ALJ's finding that the record did not support Plaintiff's statements about the extent of her psychological limitations because the finding is based upon credibility determinations and resolution of conflicts in the record.

## II.  Consideration of Medical Evidence

At the outset, the Court notes that the Social Security Administration promulgated new regulations which apply to the consideration of medical opinions and prior administrative medical findings related to claims filed on or after March 27, 2017.  See 20 C.F.R. § 404.1520c.  The new regulations no longer require that deference be given to treating physicians.  Compare § 404.1520c(a), with 20 C.F.R.

---

[4] Dr. Humphrey began treating Plaintiff on April 4, 2019. [AR at 1861 (dkt. no. 25-6 at PageID #: 3847).]  In a Medical Statement of Ability to Do Work Related Activities (Mental) form, dated April 10, 2020 ("Humphrey 4/10/20 Statement"), Dr. Humphrey opined that Plaintiff would be unable to function "more than 15% of an 8-hour workday," and would be unable to go to work three days in a month, because of her pain and disability.  [AR at 1859-60 (dkt. no. 25-6 at PageID #: 3845-46).]  Exhibit 7F is Dr. Humphrey's treatment notes from April 4, 2019 to January 8, 2020.  [AR at 572-76 (dkt. no. 24-9 at PageID #: 2547-55).]

§ 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"), and <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." (citation omitted)), *as amended* (Apr. 9, 1996).  To date, there is no controlling case law addressing the issue of what effect the new regulations have on the case law interpreting the prior regulations.  <u>See, e.g.</u>, <u>Madison L. v. Kijakazi</u>, Case No. 20-cv-06417-TSH, 2021 WL 3885949, at *4 (N.D. Cal. Aug. 31, 2021) ("It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards." (citation omitted)).  However, it is not necessary to resolve that issue in the instant case because the result would be the same under either standard.

### A.  **Dr. Varcadipane**

Plaintiff's challenge to the ALJ's consideration of Dr. Varcadipane is limited.  She began seeing Dr. Varcadipane in February 2019.  <u>See</u> AR at 613 (dkt. no. 24-10 at PageID #: 2589) (Straub Orthopaedic Surgery Follow-up Note, dated 2/1/19 by Dr. Varcadipane, stating Plaintiff "was being managed by

Dr. Scoggin").  Dr. Varcadipane performed total left knee arthroplasty on July 11, 2019, and a total left knee manipulation under anesthesia on November 7, 2019.  See AR at 795 (dkt. no. 24-11 at PageID #: 2772) (Straub Orthopaedic Surgery Follow-up Note, dated 7/26/19 by Dr. Varcadipane's physician's assistant, for post-operation visit); AR at 1135 (dkt. no. 25-2 at PageID #: 3117) (Straub Operative Note). Dr. Varcadipane continued to see Plaintiff thereafter.  See, e.g., AR at 1094-101 (dkt. no. 25-1 at PageID #: 3075-82) (Straub Orthopaedic Surgery Follow-up Note for 1/31/20 by Dr. Varcadipane).

        The ALJ found persuasive Dr. Varcadipane's April 10, 2020 opinions about Plaintiff's limitations on her ability to work.  See Decision, AR at 68 (dkt. no. 24-3 at PageID #: 2037); see also AR at 1856 (dkt. no. 25-6 at PageID #: 3842) (Dr. Varcadipane's 4/10/20 letter), quoted supra.  Plaintiff does not contend the ALJ erred in determining what weight to give Dr. Varcadipane's opinions.  See Opening Brief at 17 ("it was not error to find this opinion persuasive").  Plaintiff contends the ALJ erred by disregarding the qualification that Dr. Varcadipane included with his opinion - that "'less' impactful activities" were possible for Plaintiff "**as long as** they fall within her pain threshold and overall functional capacity."  See AR at 1856 (dkt. no. 25-6 at PageID #: 3842)

24

(emphasis added).  The ALJ did not quote that specific language in Dr. Varcadipane's letter, but the ALJ "limited [Plaintiff] to performing light exertional work with a sit/stand option due to the claimant's knee pain."  See Decision, AR at 69 (dkt. no. 24-3 at PageID #: 2038).  This Court therefore rejects Plaintiff's argument that the ALJ failed to consider the qualification of Dr. Varcadipane's opinions concerning Plaintiff's work-related abilities.  However, because the qualification of Dr. Varcadipane's opinions is closely related to Plaintiff's statements about a need to elevate and apply ice to her leg, which the ALJ improperly rejected, the significance of Dr. Varcadipane's qualification should be reconsidered by the ALJ in connection with Plaintiff's statement.

    B.   **Dr. Humphrey**

        Plaintiff saw Dr. Humphrey from April 4, 2019 to at least January 8, 2020.  [AR at 572-76 (dkt. no. 24-9 at PageID #: 2547-55) (Dr. Humphrey's treatment notes).]  The ALJ stated the opinions in the Humphrey 4/10/20 Statement were "not persuasive."  [Decision, AR at 68 (dkt. no. 24-3 at PageID #: 2037) (citing Humphrey 4/10/20 Statement, AR at 1859-60 (dkt. no. 25-6 at PageID #: 3845-46)).]  The ALJ also found the opinions of the State agency mental medical consultants were "not persuasive" because they were inconsistent with Dr. Humphrey's treatment notes and  the Humphrey 4/10/20

25

Statement.  [Id. at 69 (dkt. no. 24-3 at PageID #: 2038) (citing
Exh. 2A; Exh. 4A).[5]]  Plaintiff first argues the ALJ erred in the
evaluation of Dr. Humphrey's opinions because there is an
inherent inconsistency between the ALJ's finding that
Dr. Humphrey's observations and opinions were persuasive enough
to warrant rejection of the state agency reviewers and the ALJ's
finding that they were unpersuasive.  [Opening Brief at 17-18.]

        Reading the Decision as a whole, the ALJ found
Dr. Humphrey's opinions to be persuasive as to the issue of
whether Plaintiff had a severe psychological impairment, but the
ALJ found them not persuasive as to the issue of how much
Plaintiff's impairments limited her ability to work.  In the
Initial DDE, Dr. Yanagi opined that Plaintiff's "primary
complaint is physical cond./pain and impairment not severe based
on pscyh factors alone."  [AR at 110 (dkt. no. 24-4 at PageID
#: 2080).]  In the Reconsideration DDE, Dr. Berkowitz opined
that Plaintiff's activities of daily living, "objective signs

---

        [5] Exhibit 2A is the Disability Determination Explanation at
the initial level ("Initial DDE").  [AR at 102-13 (dkt. no. 24-4
at PageID #: 2072-83).]  The medical portion of the Initial DDE
was signed by W. Matsuno, M.D., on August 20, 2018, and
G. Yanagi, Ph.D., on August 21, 2018.  [Id. at 109-10 (dkt.
no. 24-4 at PageID #: 2079-80).]  Exhibit 4A is the Disability
Determination Explanation at the reconsideration level
("Reconsideration DDE").  [AR at 115-26 (dkt. no. 24-4 at PageID
#: 2085-96).]  The medical portion of the Reconsideration DDE
was signed by Mark Berkowitz, Psy.D., on October 31, 2018, and
J. Berry, M.D., on October 25, 2018.  [Id. at 121, 124 (dkt.
no. 24-4 at PageID #: 2091, 2094).]

and] history do not suggest the presence of any severe
psychiatric impairments."  [AR at 121 (dkt. no. 24-4 at PageID
#: 2091]  In contrast, the ALJ noted Dr. Humphrey's findings
that Plaintiff "had more than mild symptoms due to her
impairments."  See Decision, AR at 69 (dkt. no. 24-3 at PageID
#: 2038); see also Humphrey 4/10/20 Statement, AR at 1858-59
(dkt. no. 25-6 at PageID #: 3844-45).  For example, Dr. Humphrey
found that Plaintiff had marked difficulty "[m]aintain[ing]
attention and concentration for [a] two hour segment" and
moderate difficulty "[w]ork[ing] in coordination with or
proximity to others without being distracted by them or
districting them."  [Humphrey 4/10/20 Statement, AR at 1858
(dkt. no. 25-6 at PageID #: 3844). ]  The ALJ therefore rejected
the opinions of the state agency reviewers and was persuaded by
Dr. Humphrey's opinions when the ALJ considered the issue of
whether Plaintiff had any severe psychological impairments.

        The ALJ's finding that Dr. Humphrey's opinion was not
persuasive was limited to the issue of Plaintiff's RFC,
specifically to Dr. Humphrey's opinion that Plaintiff would be
unable to function for more than fifteen percent of a workday.
The ALJ found that opinion was not supported by the medical
evidence.  See Decision, AR at 68 (dkt. no. 24-3 at PageID
#: 2037).  Because there were specific areas where the ALJ found
Dr. Humphrey's opinions to be persuasive and other specific

areas where the ALJ found Dr. Humphrey's opinions not persuasive, this Court rejects Plaintiff's argument that the Decision is internally inconsistent.

Plaintiff also argues the ALJ failed to articulate sufficient reasons to support the rejection of Dr. Humphrey's opinions related to Plaintiff's RFC.  The Decision sates Dr. Humphrey's RFC opinions were "not consistent with the totality of the evidence, including the claimant's therapy treatment notes, which revealed the claimant's symptoms were generally stable with conservative treatment," and the opinions were "not supported by clinical and diagnostic evidence."  [Id.] The ALJ, however did not identify any specific clinical or diagnostic evidence which contradicted Dr. Humphrey's RFC opinions.  Under either the new Social Security Administration regulations or the case law applying the previous regulations, the ALJ failed to set forth sufficient reasons to support the rejection of Dr. Humphrey's RFC opinions.  Under the new regulations, the most important factors in the evaluation of medical opinions are supportability and consistency.  20 C.F.R. § 404.1520c(a); see also § 404.1520c(c)(1) (defining supportability); § 404.1520c(c)(2) (defining consistency).  The Decision's cursory discussion of those factors is an insufficient basis for rejecting Dr. Humphrey's RFC findings.

Under the case law interpreting the prior regulations, the fact that a claimant only had conservative treatment could be a basis for the rejection of her testimony about the severity of her impairments, but the reason why the treatment was conservative must be specified. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) ("The ALJ also noted that Parra's physical ailments were treated with an over-the-counter pain medication. We have previously indicated that evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment." (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995))).[6] The ALJ did not explain why the care that Dr. Humphrey provided to Plaintiff was considered conservative and why the conservative nature of Plaintiff's care indicated she had a greater RFC than Dr. Humphrey opined. Thus, regardless of which review standard applies, this Court concludes the ALJ erred in the consideration of Dr. Humphrey's opinions related to Plaintiff's RFC. Because the ALJ failed to properly consider those opinions, the ALJ also erred in rejecting Plaintiff's statements about the psychological limitations on her ability to work. See *supra* Discussion Section I.B.

---

[6] In Johnson, the claimant's doctor specifically concluded that "because of the condition of her lower back, claimant was 'temporarily disabled' and should 'continue a program of conservative care." 60 F.3d at 1430.

III. **Whether the Errors Were Harmless**

This Court has concluded that the ALJ erred by: rejecting Plaintiff's statements about her need to elevate her leg and apply ice to her knee on the ground that there was no medical evidence to support the necessity of this practice; rejecting Plaintiff's statements about her psychological limitations; and failing to set forth sufficient reasons to support the rejection of Dr. Humphrey's RFC opinions. Further, although there was no error specific to the ALJ's consideration of Dr. Varcadipane's opinions, the errors regarding Plaintiff's statements and Dr. Humphrey's RFC opinions warrant reconsideration of Dr. Varcadipane's opinions. The VE testified that that a person with similar limitations to those in Plaintiff's RFC who required at least one additional break to, for example, elevate her leg could not be employed. See hrg. trans., AR at 98 (dkt. no. 24-3 at PageID #: 2067). Based on the VE's testimony, the ALJ's errors were not harmless. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is 'inconsequential to the ultimate nondisability determination.'" (quoting Alaska Dep't of Envtl. Conserv. v. EPA, 540 U.S. 461, 497, 124 S. Ct. 983, 157 L. Ed. 2d 967 (2004))).

In light of this Court's rulings, the ALJ's ultimate ruling that Plaintiff was not disabled was not supported by

substantial evidence.  To the extent that Plaintiff's Appeal
raises arguments which are not specifically addressed in this
Order, it is not necessary for this Court to reach those
arguments.  This Court makes no findings or conclusions
regarding those arguments.  Plaintiff's Appeal is granted
insofar as the ALJ's Decision, including the ruling that
Plaintiff is not disabled, is reversed.

**IV.  <u>Scope of Remand</u>**

Plaintiff asks this Court to remand the case to the
ALJ with instructions to award benefits.  [Opening Brief at 19.]
The Ninth Circuit has stated,

> when "the record before the agency does not
> support the agency action, . . . the agency has
> not considered all relevant factors, or . . . the
> reviewing court simply cannot evaluate the
> challenged agency action on the basis of the
> record before it, the proper course, except in
> rare circumstances, is to remand to the agency
> for additional investigation or explanation."
> <u>Fla. Power & Light Co. v. Lorion</u>, 470 U.S. 729,
> 744, 105 S. Ct. 1598, 84 L. Ed. 2d 643 (1985).
> The Supreme Court has referred to this remand
> requirement as the "ordinary 'remand' rule."
> <u>Gonzales v. Thomas</u>, 547 U.S. 183, 185, 126 S. Ct.
> 1613, 164 L. Ed. 2d 358 (2006) (internal
> quotation marks omitted).

<u>Treichler</u>, 775 F.3d at 1099 (alterations in <u>Treichler</u>).  The
ordinary remand rule applies in social security cases.  <u>Id.</u>  The
Ninth Circuit will "generally remand for an award of benefits
only in rare circumstances, where no useful purpose would be
served by further administrative proceedings and the record has

been thoroughly developed." Id. at 1100 (citations and internal quotation marks omitted).

The instant case does not present the type of rare circumstances that warrants a remand for the award of benefits because there is at least some evidence which indicates that Plaintiff's medical care providers believed she may be able to regain the ability to work. Cf. Schuyler v. Saul, 813 F. App'x 341, 342 (9th Cir. 2020) ("Upon review of the record, it is not sufficiently clear that Schuyler could not sustain regular work. Indeed, several medical professionals opined that he likely could. Further factual development is warranted on this point."). Dr. Varcadipane opined that Plaintiff could perform lower-impact activities relevant to her ability to work if those activities could be kept within her pain tolerance and overall ability to function. See AR at 1856 (dkt. no. 25-6 at PageID #: 3842). In addition, Plaintiff's physical therapist believed that, with continued improvement as a result of therapy, Plaintiff could "gradually return to light strengthening to help overall function and allow [her] to return to work safely." See AR at 898 (dkt. no. 24-12 at PageID #: 2876) (Assessment section in Straub Physical Therapy Soap Note, dated 11/8/19).

This Court therefore finds that further factual development is necessary and remands this case to the ALJ for further proceedings. On remand, the ALJ should: resolve the

factual disputes regarding Plaintiff's ability to work; reevaluate Dr. Humphrey's opinions related to Plaintiff's RF; and reconsider the RFC finding in light of the new analysis of Dr. Humphrey's opinion and the other issues addressed in this Order.

## CONCLUSION

On the basis of the foregoing, Plaintiff's appeal of the Administrative Law Judge's April 29, 2020 Decision is HEREBY GRANTED IN PART AND DENIED IN PART.  The Appeal is GRANTED, insofar as the ALJ's Decision is REVERSED, and DENIED as to Plaintiff's request that the remand be limited to the award of benefits.  This case is REMANDED to the ALJ for further proceedings consistent with the instant Order.

There being no remaining issues in this case, the Court DIRECTS the Clerk's Office to enter judgment and close the case immediately.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 24, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**KUULEIALOHA KENNEDY VS. KILOLO KIJAKAZI, ETC; CV 20-00412 LEK; ORDER:  GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPEAL; REVERSING THE ADMINISTRATIVE LAW JUDGE'S DECISION; AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**